## STATE OF CONNECTICUT *v.* DONALD L. CHAPMAN
## (14604)

PETERS, C. J., CALLAHAN, BORDEN, BERDON, KATZ, PALMER
and SANTANIELLO, Js.[1]

[1] With the agreement of the parties, this case was reargued before a panel of six justices. After reviewing the record, the briefs and the transcript of the oral argument, Justice Callahan participated in this decision.

Argued January 4—decision released May 18, 1994*

*Lawrence J. Tytla,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti, Sr.,* state's attorney, for the appellant (state).

*Ira B. Grudberg,* with whom was *William M. Bloss,* for the appellee (defendant).

SANTANIELLO, J. The defendant, Donald L. Chapman, was found guilty by a jury of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).[2] He was sentenced to a term of

---

* May 18, 1994, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels

imprisonment of fourteen years, the execution of which was suspended after seven years.

In his appeal to the Appellate Court, the defendant claimed that the trial court had improperly instructed the jury that it could find him guilty of sexual assault in the first degree if it found that he had compelled the victim to engage in sexual intercourse either by the use of force or the threat of use of force.[3] The defendant argued that the state had neither charged him with threatening to use force nor introduced evidence of the threat of use of force. The Appellate Court concluded that the trial court had "improperly instructed the jury on a statutory alternative for which there was no supporting evidence," reversed the judgment and remanded the case for a new trial. *State* v. *Chapman,* 28 Conn. App. 360, 366, 610 A.2d 1328 (1992).

We granted the state's petition for certification limited to the following issues: "(1) Did the Appellate Court correctly conclude that the statutory alternative analysis set forth in *State* v. *Williams,* 202 Conn. 349, 363–64 (1987), applied to alternative language occurring within the same statutory sub[division] and that the trial court's instruction permitted the jury to consider a separate and distinct theory of criminal liability? (2) Was the Appellate Court correct in its failure to consider whether any error in the trial court's charge

another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[3] The defendant raised several other issues in the Appellate Court that are not before this court: (1) that he suffered from amnesia and was therefore incompetent to stand trial; (2) that the trial court improperly failed to admit statements that the victim had made to the defendant for the purpose of showing the effect of those statements on his state of mind; and (3) that the trial court improperly referred to his "misstatements" in its jury charge on consciousness of guilt. *State* v. *Chapman,* 28 Conn. App. 360, 361–62, 610 A.2d 1328 (1992).

was harmless beyond a reasonable doubt?" *State* v. *Chapman*, 223 Conn. 923, 614 A.2d 827 (1992). We affirmed the judgment of the Appellate Court and concluded, with two justices dissenting, that "the trial court improperly instructed the jury on a statutory alternative for which the defendant was not charged and for which there was no supporting evidence." *State* v. *Chapman*, 227 Conn. 616, 618, 632 A.2d 674 (1993). We also concluded that "the trial court's instruction violated the defendant's due process rights under the Connecticut constitution and that harmless error analysis is not required." Id., 618–19.

Subsequently, we granted the state's motion for en banc reconsideration and reargument of the same certified issues. We now conclude that, although the trial court's instruction to the jury was improper, any impropriety in the instruction was harmless.[4]

The jury reasonably could have found the following facts. The defendant, the owner of a horse farm in Ledyard, sold a horse to the nineteen year old victim in November, 1989. In order to help pay for the horse's board at the farm, the victim did chores at the farm after work, after school and on weekends. In addition, the defendant helped the victim train her horse, and she "trusted [the defendant] like a father."

On March 2, 1990, the defendant invited the victim and Debbie, a fourteen year old girl who also kept a horse at the farm, to spend the night in the horse barn in order to observe a mare that was about to foal. That evening, after the victim and Debbie had worked their horses, the victim's boyfriend arrived to pick her up. She told him, however, that she planned to spend the

---

[4] In view of our conclusion, on the second certified issue, that the instructional error was harmless, we need not consider the first certified issue. See *Property Group, Inc.* v. *Planning & Zoning Commission*, 226 Conn. 684, 686, 628 A.2d 1277 (1993).

night at the farm, and asked him to leave because the defendant had told her that he did not want her boyfriend there because "[i]t would look bad."

During the evening, while the defendant and the victim were sitting on a couch in the lounge area of the barn, the defendant made suggestive remarks to the victim, asking her if she would like to know "what a real man feels like . . . ." He also took her hand and placed it on his genital area. The victim pulled away and went and sat next to Debbie.

At approximately 1 a.m., the victim fell asleep on the lounge floor. Debbie was sleeping on a couch, and the defendant and his young son slept on another couch in the lounge.

At approximately 3 a.m., the defendant awakened the victim and asked her to accompany him to the office. All the others present were asleep. Assuming that the mare was about to foal, the victim accompanied the defendant. When they reached the office, the defendant asked the victim to sit on the floor. She complied, half-sitting and half-lying against the wall. The defendant then pushed her on her back and held her down with the weight of his body. Without saying anything, the defendant grabbed the victim's pants and pulled them completely off. Tossing the pants behind him, he said "I want to show you what a real man feels like." The victim kept shaking her head "no." The defendant then slid down on top of the victim and unzipped his pants. The victim tried to squirm, pull away and keep her legs together, but the defendant held her across the chest and used his legs to pry her legs apart. He then penetrated her vagina with his penis.

The victim continued to struggle and succeeded in squirming away from the defendant. During the course of the struggle, the defendant repeatedly asked the vic-

tim, "[I]sn't this what you wanted?" She responded, "no, no." The defendant also told the victim to keep quiet because she was being too loud. After he had penetrated the victim, the defendant got up, tossed the victim's pants to her and left the office. The victim, thereafter, put her pants back on, returned to the lounge and crawled onto the couch with Debbie.

The next morning, Debbie, noticing that the victim appeared to be bothered by something, asked her what was wrong. The victim did not respond. Later, without going into detail, the victim told Debbie and Kim, an older girl who had arrived at the barn, what had happened. The victim and Debbie then went to talk to Debbie's parents. The victim told Debbie's parents that the defendant had taken her into his office, placed her in a corner, removed her pants and penetrated her even though she had attempted to cross her legs and struggled with him. Debbie's parents convinced her to call the police. A police officer, Carl Fowler, came to Debbie's parents' house and took a statement from the victim. The statement was later introduced at the defendant's trial as constancy of accusation evidence.

That evening, Kim was at the defendant's barn. While she was there, the defendant borrowed her car and drove away. He returned a short time later and stated to Kim: "[I]t is over. . . . I'm going to kill myself." He told Kim that his marriage was unsatisfactory, that he was "horny" and that he needed sex all the time. He also said that he would rather kill himself than go to jail. He then stated that "they" were at the police station and asked Kim to give him a ride in her car.

Kim drove the defendant to Debbie's parents' house, where the defendant saw the victim's boyfriend's truck. Debbie's parents' car, however, was not there. The defendant told Kim that the victim must be telling on

him, and asked her to take him to the police station. When they arrived at the police station, they saw the victim, Debbie and her parents leaving. The defendant then asked Kim to take him to Debbie's parents' house.

The victim, Debbie and her parents found the defendant waiting for them at the house. Debbie's father spoke to the defendant, who was crying, upset and pleading for forgiveness. He stated that he was sorry, that he did not want to go to jail and that "this time" he would go to jail. He asked Debbie's father whether they were going to press charges. When Debbie's father asked him, "[D]o you know what you have done," the defendant became hysterical. The defendant then fled on foot, stating that he was going back to the barn to shoot himself.

The police were called again, and Resident State Trooper Ronald Robbins went to the barn where he found the defendant with a gun. After convincing the defendant to put the gun down, Robbins arrested him and warned him of his rights. The defendant gave a written statement to Detective Edward Melvin at that time.

In the statement, the defendant acknowledged approaching the victim and inviting her to his office to "finish what she had started." He stated that they then had kissed, and he had removed her pants. He claimed that the victim then had changed her mind, and he had lectured her about being a tease. He said that he had told her that many men would not stop, but that "[h]e was a nice guy." He also told Melvin that the victim was "[o]f legal age," that she "was a troublemaker who made up stories," that she had not been wearing underwear and that he had never exposed his penis to her. Because at trial the defendant claimed that he had

amnesia regarding the entire incident, the trial court permitted him to introduce the statement he had given Melvin.

In its charge, the trial court paraphrased § 53a-70 (a) (1) to the jury in its entirety, stating that "a person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person *or by the threat of the use of force* against such person which reasonably causes such person to fear physical injury." (Emphasis added.) The defendant took an exception to the court's instructing on a theory of liability for which there was no evidence, thereby properly preserving the issue for appeal. Practice Book § 852; see *State* v. *Tweedy,* 219 Conn. 489, 510, 594 A.2d 906 (1991). After the defendant was convicted, he appealed to the Appellate Court, which sustained his appeal, and the state appealed to this court, on our grant of certification.

In the Appellate Court, the state conceded that the instruction, as given, was improper because the state did not introduce any evidence of a threat made to the victim by the defendant.[5] For the purposes of this appeal, we accept the state's concession. Accordingly,

---

[5] In the Appellate Court the state conceded that it had introduced no evidence of a threat, and we take this concession, as did the Appellate Court, as a concession that it did not introduce any evidence of a threat, express or implied. The state did, however, argue in the Appellate Court, as it does here, that the error was harmless. In this court, the state has modified its position, and concedes that it had introduced no "specific" evidence of a threat, but maintains that evidence of an implied threat may be inferred from the use of force. Because we are reviewing the opinion of the Appellate Court, we will not permit the state to modify its concession.

We therefore consider the case on the basis that, for purposes of determining whether the charge was erroneous, there was no evidence of a threat. This does not necessarily require, however, that we also assume, for purposes of determining the harmlessness of the error, that under the facts of this case the actual use of force could not also imply a threat of force. See pp. 547–48.

we must consider whether the Appellate Court improperly failed to apply a harmless error analysis.

The substitute information in the present case stated only that the defendant had compelled the victim to engage in sexual intercourse "by the use of force." In its charge to the jury, however, the trial court read the entire statute, stating that the jury could convict the defendant of sexual assault in the first degree if it found that he had compelled the victim to engage in sexual intercourse by the use of force or the threat of the use of force. It is improper for the trial court to read an entire statute to a jury when the pleadings or the evidence support a violation of only a portion of the statute. *State* v. *James,* 211 Conn. 555, 583, 560 A.2d 426 (1989); see *State* v. *Franko,* 199 Conn. 481, 493, 508 A.2d 22 (1986); *State* v. *Carter,* 189 Conn. 631, 645, 458 A.2d 379 (1983). The jury charge was overly expansive because the state had presented no evidence of the threat of the use of force. See *State* v. *Diggs,* 219 Conn. 295, 298-302, 592 A.2d 949 (1991).

Having concluded that the trial court instructed the jury improperly, we must determine whether: (1) the error is constitutional or nonconstitutional in nature; and (2) whether it was harmful. See *State* v. *Lewis,* 220 Conn. 602, 600 A.2d 1330 (1991). The defendant contends that, under our holding in *State* v. *Williams,* supra, 202 Conn. 363–65, an instruction that includes a charge to the jury on a theory of liability that is not supported by the evidence is a due process violation that cannot be considered harmless. We disagree.

The defendant first argues that the trial court's instruction violated his constitutional right to be informed of the nature and cause of the charges against him. We are not persuaded by this argument.

"The sixth amendment to the United States constitution and article first, § 8, of the Connecticut consti-

tution guarantee a criminal defendant the right to be informed of the nature of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and . . . to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . . *State* v. *Scognamiglio,* 202 Conn. 18, 22, 519 A.2d 607 (1987). Therefore, for the defendant to establish an infringement of these constitutional rights, he must demonstrate that the court's charge caused him unfair surprise or prejudiced the preparation of his defense. *State* v. *Franko,* [supra, 199 Conn. 490]." (Internal quotation marks omitted.) *State* v. *Ruscoe,* 212 Conn. 223, 253, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990).

The substitute information put the defendant on notice that he was charged with compelled sexual intercourse. His theory of defense, advanced through his out-of-court written statement introduced at trial, was that the victim initially had consented to engage in sexual intercourse, but that she had changed her mind and that he had halted his advances. The defendant contended that he could not have compelled the victim to engage in sexual intercourse, because sexual intercourse had never occurred. There is not the slightest indication in this record that the defendant's defense would have been different if the instruction had not included the threat of use of force. We conclude that the trial court's instruction did not prejudice the defendant. Because the defendant's theory of defense is unrelated to the method of compulsion employed to compel intercourse, the defendant has not established a violation of his constitutional right to be informed of the charges against him. Any impropriety in the court's charge, therefore, does not require reversal on this basis. *State* v. *Scognamiglio,* supra, 202 Conn. 22.

The defendant also asserts a due process violation under both the United States constitution and article first, § 8, of the Connecticut constitution based on *State* v. *Williams,* supra, 202 Conn. 349. We disagree. Our decision in *State* v. *Williams,* supra, 363, was founded on our interpretation of federal cases holding that including an instruction on a factually unsupported theory of liability constituted a federal due process violation. See *State* v. *Marino,* 190 Conn. 639, 651, 462 A.2d 1021 (1983), citing *Leary* v. *United States,* 395 U.S. 6, 31–32, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969), and *Yates* v. *United States,* 354 U.S. 298, 312, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957), overruled on other grounds, *Burks* v. *United States,* 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). Since *Williams* was decided, however, the United States Supreme Court has held that a factual insufficiency regarding one statutory basis, which is accompanied by a general verdict of guilty that also covers another, factually supported basis, is not a federal due process violation. *Griffin* v. *United States,* 502 U.S. 46, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991). The defendant's claim in this case is analagous to the claim in *Griffin.* "Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence . . . ." (Citation omitted; emphasis in original.) Id., 59.

" 'It is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.' " Id., 59–60. The instruction in the present case charged the jury on compelled sexual intercourse by the threat of the use of force, a legally adequate theory of liability for which there was no evidence. The jurors, however, were in a position to be able to evaluate the testimony presented and to assess whether the charged theory was supported by the evidence.

In reaching its decision in *Griffin,* the United States Supreme Court distinguished it from *Leary* v. *United States,* supra, 395 U.S. 6, stating that *Leary* was a case in which the jury verdict may have rested on an unconstitutional ground. *Griffin* v. *United States,* supra, 502 U.S. 55. The Appellate Court in this case, however, relied upon *Leary,* in part, in determining that the impropriety in instructing the jury concerning the unsubstantiated theory of liability was of constitutional magnitude. *State* v. *Chapman,* supra, 28 Conn. App. 365. In *Griffin,* the United States Supreme Court also distinguished *Yates* v. *United States,* supra, 354 U.S. 298, because *Yates* was a case in which one of the possible grounds for conviction was legally insufficient as opposed to being supported by inadequate evidence. *Griffin* v. *United States,* supra, 55. The court specifically stated that *Yates* should not be extended to cases in which one of the grounds for conviction was inadequately supported by the evidence. Id.

At oral argument before this court, the defendant conceded that, in light of the holding in *United States* v. *Griffin,* supra, 502 U.S. 55–56, the jury instruction

at issue in this case did not constitute a federal constitutional violation. We agree with that concession.[6]

At oral argument in this court, the defendant also conceded that his claim of error under the state constitution relies on the analysis presented in *State* v. *Marino,* supra, 190 Conn. 639. The defendant's brief supports that concession. Although he did refer to article first, § 8, in his brief, his entire constitutional analysis thereunder was based on the *Williams* and *Marino* line of cases. There is no reference to the language or history of article first, § 8, no reference to prior constitutional decisions of this or other states, and no reference to policy considerations. See *State* v. *Geisler,* 222 Conn. 672, 610 A.2d 1225 (1992). As noted above, the analysis in *State* v. *Marino,* supra, 649, and *State* v. *Williams,* supra, 202 Conn. 349, is a federal constitutional analysis that has been rendered inapplicable by *United States* v. *Griffin,* supra, 502 U.S. 55–56, to cases involving factual insufficiency. The Appellate Court decision was based upon the same flawed federal constitutional analysis. The certified questions do not invoke the state constitution. Under these circum-

---

[6] We have previously indicated that the United States Supreme Court had applied the rule regarding instructions on an inadequate theory of liability to claims of evidentiary insufficiency. *State* v. *Reid,* 193 Conn. 646, 667 n.22, 480 A.2d 463 (1984), citing *Cramer* v. *United States,* 325 U.S. 1, 36 n.45, 65 S. Ct. 918, 89 L. Ed. 2d 1441 (1945). The United States Supreme Court addressed this interpretation of *Cramer* in *Griffin* v. *United States,* supra, 502 U.S. 55 n.1. The court stated that *Cramer,* like *Leary* and *Yates,* was not a case involving the sufficiency of the evidence, and that the court in *Cramer* addressed whether the facts adduced at trial were sufficient *in law* to constitute the alleged violation. Id. The court also noted that the Second Circuit Court of Appeals had distinguished *Cramer* from sufficiency of the evidence cases. See *Cramer* v. *United States,* 137 F.2d 888, 893–94 (2d Cir. 1943). Consequently, reliance on *Cramer* v. *United States,* supra, 325 U.S. 1, for the proposition that evidentiary insufficiency is an appropriate federal ground upon which to invalidate a general verdict has been precluded by the United States Supreme Court's interpretation of that case.

stances, therefore, we conclude that a state constitutional basis for the instructional impropriety in this case has not been properly and adequately presented to us.

We next consider the defendant's argument that, under *State* v. *Williams,* supra, 202 Conn. 349, the instructional error in this case requires a per se reversal, without consideration of its harmfulness. We are not persuaded by this argument.

Every case that we have found in which a similar instructional error was treated as a ground for per se reversal error traces back, ultimately, to *Leary* and *Yates.* See, e.g., *State* v. *Hufford,* 205 Conn. 386, 399, 533 A.2d 866 (1987); *State* v. *Williams,* supra, 202 Conn. 363; *State* v. *Arnold,* 201 Conn. 276, 281, 514 A.2d 330 (1986); *State* v. *Silveira,* 198 Conn. 454, 459, 503 A.2d 599 (1986); *State* v. *Thompson,* 197 Conn. 67, 74, 495 A.2d 1054 (1985); *State* v. *Asherman,* 193 Conn. 695, 730, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *Reid,* 193 Conn. 646, 480 A.2d 463 (1984); *State* v. *Marino,* supra, 190 Conn. 651. *Leary* and *Yates,* however, have now clearly been shown by *Griffin* v. *United States,* supra, 502 U.S. 55–56, (1) not to be based on the federal constitution, and (2) to have had no initial constitutional basis.

Moreover, in those cases that do not derive from *Leary* and *Yates,* we have consistently held that submission of an instruction for which there was no basis in the evidence is subject to harmless error analysis. See, e.g., *State* v. *Torrence,* 196 Conn. 430, 438, 493 A.2d 865 (1985) (harmless error analysis applied to submission of part of insanity defense for which there was no evidence, and error held harmless because that was not the issue actually litigated at trial); *State* v. *Townsend,* 206 Conn. 621, 627, 539 A.2d 114 (1988) (harmless error analysis applied to overinclusive instruction

on larceny statute, and error held harmless because no prejudice to defendant); *State* v. *Gonzales*, 222 Conn. 718, 724–26, 609 A.2d 1003 (1992) (instruction on inapplicable part of attempt statute held harmless).

Indeed, in *State* v. *Cerilli*, 222 Conn. 556, 582–85, 610 A.2d 1130 (1992), the trial court improperly instructed the jury that the state did not have to prove an intentional failure to appear, which was an element of the crime charged, in order to convict under General Statutes § 53a-172 (wilful failure to appear). Having concluded that the court's instruction either eliminated the wilfulness element or shifted the burden of proof to the defendant, we nonetheless held the error harmless beyond a reasonable doubt because, considering the evidence in the case, there was no reasonable possibility that the jury was misled. Id., 585. If that kind of instructional error is subject to harmless error analysis, we see no sound reason why the kind of error committed in this case requires per se reversal.

Furthermore, we have held that, where the state charges that a defendant has committed a crime in more than one way, and those ways are charged in the conjunctive, as they must be, and the trial court instructs, as it must, that the state need only prove one of its allegations, and not all, the verdict must be upheld so long as there is sufficient evidence under any of the allegations. See, e.g., *Turner* v. *United States*, 396 U.S. 398, 90 S. Ct. 642, 24 L. Ed. 2d 610 (1970); *State* v. *Eason*, 192 Conn. 37, 42, 470 A.2d 688 (1984); *State* v. *Torres*, 24 Conn. App. 316, 588 A.2d 232 (1991); *State* v. *Lode*, 36 Conn. Sup. 603, 609, 421 A.2d 880 (1980). Yet in those cases, presumably there is no way to know definitively whether the jury found the defendant guilty under the supported or unsupported allegation. We look only to see whether there was evidence to support any one of the allegations. In effect, we assume that the

jury found the defendant guilty under the supported allegation, rather than the unsupported allegation.

Analytically, applying the per se reversal principle to this case would be inconsistent with those cases, because to do so would be to assume that the jury found the defendant guilty under the unsupported part of the instruction. We fail to see why we should engage in that assumption. The sounder rule is that, having found the instructional error, we then go on to determine, as we ordinarily do, whether the error was harmless.

We therefore consider, on a nonconstitutional basis, the harmfulness of the impropriety in the trial court's instruction. "When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980). The defendant must show that it is more probable than not that the erroneous action of the court affected the result. Id.; *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 929 (1976). *State* v. *Jones,* 205 Conn. 723, 732, 535 A.2d 808 (1988). *State* v. *Vilalastra,* [207 Conn. 35, 47, 540 A.2d 42 (1988)]." (Internal quotation marks omitted.) *State* v. *Campbell,* 225 Conn. 650, 657, 626 A.2d 287 (1993). Under the circumstances of this case, we cannot conclude that it is more probable than not that the court's instructional impropriety affected the result.[7]

"[T]he appellate harmless error doctrine is rooted in [the] fundamental purpose of our criminal justice system—to convict the guilty and acquit the innocent. The harmless error doctrine recognizes the principle

[7] Moreover, even if we were to consider the instructional error to be of constitutional magnitude, and thus apply the constitutional standard of harmfulness, we would reach the same conclusion. Based on all of the considerations outlined in the text of this opinion, pp. 545–48, we are convinced beyond a reasonable doubt that the error was harmless.

that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, *United States* v. *Nobles,* 422 U.S. 225, 230 [95 S. Ct. 2160, 45 L. Ed. 2d 141] (1975), and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. *Rose* v. *Clark,* 478 U.S. 570, 577, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986), quoting *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)." (Internal quotation marks omitted.) *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 460, 610 A.2d 598 (1992).

" 'For an erroneous portion of a charge to be reversible error, this court must consider the whole charge and it must be determined, in appeals not involving a constitutional question, if it is reasonably probable that the jury were misled . . . and, in appeals involving a constitutional question, if it is reasonably possible that the jury were misled.' " (Citations omitted.) *State* v. *Ruiz,* 171 Conn. 264, 273, 368 A.2d 222 (1976), quoting *State* v. *Rose,* 169 Conn. 683, 687–88, 363 A.2d 1077 (1975).

First, although the court in its instructions improperly included the reference to the threat of use of force, the court specifically defined only the actual use of force. In its charge to the jury, the trial court stated: "Now, a person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or by the threat of the use of force against such person which reasonably causes such person to fear physical injury. In order to commit the crime of sexual assault in the first degree the state must prove beyond a reasonable doubt that, one, sexual intercourse had taken place. And two, the defendant compelled the victim to engage in sexual intercourse either by the use

of force or by threat of the use of force which caused the victim to reasonably fear physical injury to herself. . . . If you find that the required sexual intercourse had been proven beyond a reasonable doubt, you must next determine whether the defendant used or threatened the use of force. Use of force means either the use of a dangerous instrument. There is no claim of that here. Or the use of actual physical force or violence or superior physical strength against the victim. Thus, if you find that the [state] has proved beyond a reasonable doubt each of the elements of this offense you will find the defendant guilty. If on the other hand, you conclude that the state has failed to prove beyond a reasonable doubt one or more of these elements you must find the defendant not guilty of the crime charged."

Moreover, the court gave the jury the substitute information, which referred only to the use of force, and instructed the jury to be guided by this information in its deliberations. The court stated: "[Y]ou are guided by that information. In other words, the state is alleging the facts as you find them in that substitute information as a basis for their claim that the defendant Donald Chapman did commit the crime of sexual assault in the first degree." The substitute information stated, in part, that "the defendant attempted to, and did compel, the victim to engage in sexual intercourse by the use of force against said victim, to wit: the said Donald L. Chapman restrained the victim, attempted to, and did forcibly penetrate her vagina with his penis . . . ." The substitute information did not mention any threats. In addition, the jury was instructed to "consider only such evidence as was admitted."

In addition, because at trial the defendant claimed to have had amnesia, he based his defense on the statement that he had given to the police in which he claimed that intercourse never took place. There is no indica-

tion that the defendant would have changed his defense had the information also contained the "threat of the use of force" language. From this point of view any impropriety in the instruction was harmless.

Furthermore, under the facts of this case, no reasonable juror could have convicted the defendant of sexual assault in the first degree solely by the use of threats. The victim testified, and the constancy of accusation evidence was that the defendant had used actual force to overcome her resistance. The state also introduced evidence of numerous inculpatory statements that the defendant had made to other persons and of the defendant's inculpatory course of conduct after the incident. The defendant, on the other hand, claimed only that sexual intercourse had never occurred. He stated that initially the victim had consented to engage in sexual intercourse, that they had kissed, and that when the victim had changed her mind about having intercourse, he had stopped. To find the defendant guilty of sexual assault by the threat of use of force, the jury would have had to fabricate evidence of explicit threats when none had been presented, and to ignore the evidence that had been presented.

Finally, under the facts of this case, if the jury did rely on an inference of a threat of force in order to convict the defendant, that inference could only have been drawn from the evidence of the defendant's actual use of force. In this case, in which the evidence was that the defendant compelled the victim to submit to sexual intercourse despite the victim's continued resistance, the jury could have inferred that the use of force carried with it the implied threat that additional force would be used unless the victim submitted to the defendant. Thus, any improper enlargement of the offense by virtue of the instruction was harmless because the jury's reliance on that enlargement could only have arisen from an antecedent finding of the actual use of

force, which was the conduct with which the defendant had been charged and with regard to which the jury had been properly instructed.

The judgment of the Appellate Court is reversed, and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion PETERS, C. J., CALLAHAN, BORDEN and PALMER, Js., concurred.

BERDON, J., with whom KATZ, J., joins, dissenting. This court, sitting en banc, reverses our original decision in *State* v. *Chapman,* 227 Conn. 616, 632 A.2d 674 (1993) (*Chapman I*). The new majority *unfairly* reaches out for issues not raised by either the state or the defendant and purports to base its decision on *Griffin* v. *United States,* 502 U.S.     , 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991). In doing so, it not only fails in its analysis of *Griffin,* but, more importantly, ignores the longstanding common law of our state, and the due process clause of our state constitution. The majority now rules that, although the jury should not have been instructed that they could find the defendant guilty of a statutory alternative method of committing a crime for which there is no evidence, such instructional error does not offend due process. As a result, the majority concludes that such a jury charge is subject merely to a nonconstitutional harmless error analysis.

I

I will not repeat our entire analysis in *Chapman I.* I will, however, underscore some of the points we made in that decision. The analysis in *Chapman I* was not based on federal precedent, but rather on the common law and state constitutional law of this state.

In *Chapman I,* we held, and the present majority concedes, that it was improper for the trial court to have

instructed the jury that they may find a criminal defendant guilty of a statutory alternative for which there is no evidence. Id., 618. We concluded, however, that this error not only violated our long established common law, but also violated the due process clause of the state constitution. Id., 619. We reasoned as follows: "An instruction on a statutory alternative that is not supported by the evidence violates a defendant's fundamental right, protected by the due process clause of article first, § 8, of the Connecticut constitution, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt. *State* v. *Williams,* [202 Conn. 349, 363, 521 A.2d 150 (1987)]; see also *State* v. *Rodriguez,* 223 Conn. 127, 147, 613 A.2d 211 (1992); *State* v. *Allen,* 216 Conn. 367, 388–89, 579 A.2d 1066 (1990); *State* v. *John,* 210 Conn. 652, 688, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989); *State* v. *Arnold,* 201 Conn. 276, 281–82, 514 A.2d 330 (1986); *State* v. *Reid,* 193 Conn. 646, 666, 480 A.2d 463 (1984). A similar principle applies when the trial court instructs the jury that it may convict a defendant on the basis of a statutory alternative for which there is no evidence. Accordingly, it is firmly entrenched in the common law of this state that [t]he court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding. *State* v. *Williams,* supra, 364; *Batick* v. *Seymour,* 186 Conn. 632, 641, 443 A.2d 471 (1982). [I]f a claim is made against the evidence in the case, and wholly unsupported by proof, it is error to submit it to the jury as if the evidence justified the claim, and without comment, as there is great danger of its leading to an unjust verdict. *Lewis* v. *Phoenix Mutual Life Ins. Co.,* 44 Conn. 72, 88 (1876); see also *Allen* v. *Rundle,* 50 Conn. 9, 33, 47 A. 599 (1882); *Hartford* v. *Champion,* 58 Conn. 268, 276, 20 A. 471 (1890); *McGarry* v. *Healey,* 78 Conn. 365, 367, 62 A. 671 (1905); *Miles*

v. *Sherman,* 116 Conn. 678, 682, 166 A. 250 (1933) . . . *Novak* v. *Anderson,* 178 Conn. 506, 508, 423 A.2d 147 (1979).

"The principle of not submitting to the jury any issue for which there is insufficient evidence has roots in our early common law. Justice Swift, writing in 1822, shortly after the adoption of the state constitution in 1818, noted that the jury in its deliberations must find expressly all the facts put in issue, or must negate them all. 2 Z. Swift, Digest of the Laws of the State of Connecticut (1823) p. 774. Similarly, Justice Swift recognized the court's power to direct the jury to say, in their verdict, on which count they find the defendant guilty, and to find him not guilty on the rest, so that if he should be found guilty on an insufficient count, he might take advantage of it by motion in arrest. Id., p. 383. Also imbedded in our common law is the notion that the judge has the power to defend the innocent against an unjust verdict . . . . Id., p. 413. Implicit in the power to set aside a verdict that has no support in the evidence, is the idea that the court should not submit to the jury, in the first instance, an issue that has no support in the evidence. By doing so, the court invites an unjust verdict." (Internal quotation marks omitted.) *Chapman I,* supra, 227 Conn. 627–29.

The majority in this case decides that the error is not one of constitutional magnitude on the grounds that (1) our cases prior to *Chapman I* were based solely on federal constitutional precedent and the United States Supreme Court has reversed itself in the recent case of *Griffin* v. *United States,* supra, 112 S. Ct. 466, and (2) the state constitutional issue is not before us because it was not part of the certified issue and the defendant failed to furnish us with a state constitutional analysis. I will discuss the purported waiver of the state constitutional issue in part II of this dissent.

The majority's reliance on *Griffin* is misplaced, because *Griffin* is not sufficiently dispositive of the issues in this case to allow this court to abrogate the *Williams* line of cases without analysis. "In *Griffin,* the court reaffirmed the rule, under federal law, set forth in *Turner* v. *United States,* 396 U.S. 398, 420, 90 S. Ct. 642, 24 L. Ed. 2d 610 (1970), as follows: [W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged. . . . *Griffin* is therefore inapposite in this case because it is limited to statutory alternatives charged in the conjunctive. In the present case, the trial court's instructions to the jury . . . charged the defendant *disjunctively.*" (Citation omitted; emphasis in original; internal quotation marks omitted.) *Chapman I,* supra, 227 Conn. 625–26.

In *State* v. *Reid,* supra, 193 Conn. 667 n.22, Justice Shea discussed this distinction and cautioned against the confusion of cases in which the trial court permits the jury to consider an "improper basis for a conviction under circumstances where it is impossible to tell whether the conviction rests upon the impermissible ground" with cases involving the rule that "where a guilty verdict is returned on an information charging several acts in the conjunctive the information is not defective in relation to the verdict if the evidence is sufficient with respect to any of the acts charged." This distinction is sound. Even if the jury is erroneously instructed in the conjunctive—for example, it is instructed that in order to find the defendant guilty it must find both a threat and the use of force, and the evidence supports a conviction solely on the basis of the use of force—on a verdict the court can nevertheless be assured that the jury predicated its decision on an alternative for which there was evidence and the alternative for which there is no evidence becomes

superfluous. On the other hand, if the jury is errone-
ously instructed that it may find guilt on the basis of
statutory alternatives disjunctively, as in the present
case, there is no way to determine whether the jury
predicated its finding on the alternative that was sup-
ported by evidence. Because of this distinction, regard-
less of whether *Williams* was predicated on federal law,
state common law, or the state constitution, the deci-
sion in *Griffin* does not control this case.

Finally, as we noted in *Chapman I,* under the state
constitution a per se reversal rule is required. "Ordinar-
ily, we abide by the principle that an otherwise valid
conviction should not be set aside if the reviewing court
may confidently say, on the whole record, that the con-
stitutional error was harmless beyond a reasonable
doubt. . . . Nevertheless, some constitutional errors
require automatic reversal in order to vindicate the fun-
damental right in question. [I]nfringements of a defend-
ant's constitutional rights in a criminal case where
harmless error analysis is deemed inappropriate involve
situations where the constitutional violation must be
deemed harmful under all circumstances or where it
is of such a nature that ascertainment of its harmful-
ness is impossible or so difficult as not to warrant the
endeavor. Such cases are rare exceptions to the prin-
ciple that an otherwise valid conviction should not be
set aside if the reviewing court may confidently say,
on the whole record, that the constitutional error was
harmless beyond a reasonable doubt. . . . *State* v.
*Mebane,* 204 Conn. 585, 604–605, 529 A.2d 680 (1987),
cert. denied, 484 U.S. 1046, 108 S. Ct. 784, 98 L. Ed.
2d 870 (1988) (*Shea, J.,* concurring); J. Bruckmann, G.
Nash & J. Katz, Connecticut Criminal Caselaw Hand-
book (1989) p. 492.

"The present case falls within the category of cases
that require automatic reversal. . . . By instructing
the jury on a statutory alternative for which there was

no evidence, the trial court expressly sanctions a verdict that has no foundation in the evidence. Following such an instruction, it is impossible to determine whether the jury based its decision on an act for which there was insufficient evidence . . . . We will never know the statutory predicate for the jury's verdict. Accordingly, when the jury, on the basis of the trial court's instructions, renders a general verdict that does not specify the statutory alternative on which it rests, it must be set aside if the evidence as to either alternative submitted was insufficient . . . without engaging in a harmless error analysis." (Citations omitted; internal quotation marks omitted.) *Chapman I*, supra, 227 Conn. 629–31.

Furthermore, as we pointed out in *Chapman I*, the per se rule is consistent with the longstanding common law principle in this state that an "unjust verdict" cannot be tolerated. "We have consistently held that no issue may be submitted to the jury for which there is no evidence. Thus, we have ordered new trials in cases in which the trial court improperly submitted to the jury an issue for which there was no evidence. *Novak* v. *Anderson*, [supra, 178 Conn. 508]; *Miles* v. *Sherman*, [supra, 116 Conn. 683]; *Lewis* v. *Phoenix Mutual Life Ins. Co.*, [supra, 44 Conn. 88]. Moreover, this court has recognized the trial court's inherent power to set aside an unjust verdict. *State* v. *Hammond*, 221 Conn. 264, 267–70, 604 A.2d 793 (1992); *State* v. *Avcollie*, 178 Conn. 450, 456, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980)." *Chapman I*, supra, 227 Conn. 631 n.11.

II

The majority refuses to reach the state constitution on the grounds that no state constitutional issue was expressly framed within the certified issue, and the defendant failed to provide an adequate analysis of our

state constitution. We certified the following issues: "(1) Did the Appellate Court correctly conclude that the statutory alternative analysis set forth in *State* v. *Williams,* [supra, 202 Conn. 363–64], applied to alternative language occurring within the same statutory subsection and that the trial court's instruction permitted the jury to consider a separate and distinct theory of criminal liability? (2) Was the Appellate Court correct in its failure to consider whether any error in the trial court's charge was harmless beyond a reasonable doubt?" *State* v. *Chapman,* 223 Conn. 923, 923–24, 614 A.2d 827 (1992).

The first certified issue referred to specific pages of *State* v. *Williams,* supra, 202 Conn. 363–64, that expressly ground the precise issues in this case in the state constitution. The second certified issue assumes a constitutional violation and merely raises whether the court should employ a constitutional harmless error analysis rather than the per se harmlessness rule that had been applied by the Appellate Court. See *State* v. *Chapman,* 28 Conn. App. 360, 366, 610 A.2d 1328 (1992). A fair, and indeed the only, reading of both certified issues is whether threat and force are statutory alternatives under *Williams,* and, if so, whether we should abandon the rule requiring automatic reversal and utilize the constitutional standard requiring the state to prove the error harmless beyond a reasonable doubt. Therefore, the certified issues did not place the defendant on notice that the viability of *Williams* was in jeopardy under either the federal or state constitutions.

Furthermore, no argument presented by the state ever put the defendant on notice that the presence of constitutional error was in question. In its petition for certification, the state sought review of "[w]hether the Appellate Court erred by failing to consider whether any error in the trial court's charge was harmless *beyond a reasonable doubt*?" (Emphasis added.) This

issue proffered by the state concedes that it is an error of constitutional magnitude. In its brief, the state only raised the following arguments: (1) the *Williams* line of cases *does not apply* to the statutory alternatives of force and threat of force because the alternatives are not conceptually distinct, and are found within the same statutory subsection and (2) "[t]he Appellate Court erred by failing to consider whether any error in the trial court's charge was harmless beyond a reasonable doubt." In its harmlessness analysis, the state's argument was that the trial court's instructions were harmless beyond a reasonable doubt.

Finally, although the defendant's initial brief did not elaborately explore the state constitutional issue, he did raise it adequately. It is understandable that the defendant did not devote a great deal of analysis to the issue, because the defendant relied on cases such as *Williams,* which already decided the issue, the certified issue implicitly conceded a constitutional violation, and the state did not make any serious attempt to expand the certified issue and argue that there was no constitutional error. In addition, the majority in *Chapman I* analyzed the issues predicated on the state constitution.

The unfairness of the majority decision here is further underscored in the order of reargument before the en banc court. We requested the parties to file supplemental briefs "not to exceed ten pages in length and devoted to the issue of how the opinion in [*Chapman I*] conflicts with the opinion in *State* v. *Tucker,* [226 Conn. 618, 629 A.2d 1067 (1993)], and the other cases referred to in the State's . . . motion for reconsideration or reargument en banc . . . ." The only issue in *Tucker* arguably relevant to the issues in this case is whether the statutory alternatives of threat and force are conceptually indistinct for evidentiary sufficiency as well as jury unanimity purposes—an issue the

majority opts not to address. There was not even a suggestion in the order of reargument that we were contemplating the abrogation of the state constitutional analysis in *Chapman I,* or that the court intended to tinker with the standard of review, let alone abandon a constitutional harmlessness analysis altogether. Accordingly, the state's supplemental brief merely expanded on its hypothesis, which it had already briefed, that the use of force and threat of force are conceptually indistinct. The defendant's supplemental brief responded to this argument within the ten pages allotted by the court's order. Therefore, in *all* the proceedings before the Appellate Court, and before this court, the state has conceded that if the alternatives were distinct, there was constitutional error, but any constitutional error was harmless beyond a reasonable doubt.

Today, not only do we reverse our longstanding common law in Connecticut with no analysis of why we should do so, but the majority of this court has deprived the defendant of his fundamental right of due process to be heard before this court "in a meaningful manner." *Armstrong* v. *Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965). Although there may be no fundamental right to an appeal from a criminal conviction; *Griffin* v. *Illinois,* 351 U.S. 12, 18, 76 S. Ct. 585, 100 L. Ed. 891 (1956); once the state grants criminal defendants the right to appeal, the procedures it uses must conform to due process of the law. *North Carolina* v. *Pearce,* 395 U.S. 711, 724–25, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); *Griffin* v. *Illinois,* supra, 18. As a result of this court's departure from the original certified issue,[1] the order on reargument that surely misled the defendant by limiting the briefs to a ten page

---

[1] The court, of course, has the authority to depart from a certified issue if the dictates of justice so demand. *Paranteau* v. *DeVita,* 208 Conn. 515, 516 and n.1, 544 A.2d 634 (1988). Furthermore, the court has the author-

discussion of an issue not considered on reargument and failing to identify the actual issue considered, and the injection of an issue not argued by the state without giving the defendant an opportunity to respond and to be heard, the defendant has been deprived of his right to due process of the law under both the state and federal constitutions. The court's actions today are regrettable.

Accordingly, I respectfully dissent.

ity and the duty to abrogate the fundamental rule of law set out in the *Williams* line of cases if it believes the rule to be unsound. The court should not take such momentous action, however, without notice and an opportunity for the defendant to be heard.