STATE OF CONNECTICUT *v.* PATSY RUSSO
(AC 19709)

Foti, Schaller and O'Connell, Js.

Argued October 24, 2000—officially released March 6, 2001

*Joaquina Borges King*, special public defender, for the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Mark Brodsky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Patsy Russo, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes (Rev. to 1997) § 14-227a (a) (1).[1] The defendant's

[1] General Statutes (Rev. to 1997) § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence . . . if he operates a motor vehicle on a public highway of this state . . . (1) while under the influence of intoxicating liquor or any drug or both . . . ."

sole claim is that the trial court improperly admitted testimony regarding the results of a horizontal gaze nystagmus (HGN) test without requiring that the state satisfy the criteria for the admission of scientific evidence as set forth in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 16, 1998, at approximately 6:45 p.m., Arliss Gamble was sitting in his vehicle, which was parked on the side of Craigmore Road in Bloomfield. Gamble noticed another vehicle, operated by the defendant, traveling toward him. The defendant's vehicle collided head on with Gamble's vehicle.

Thereafter, Officer Eric Kovanda of the Bloomfield police department arrived at the accident scene. Kovanda approached the defendant, who was still in his vehicle. After some initial observations, Kovanda suspected that the defendant was intoxicated because his breath emitted a strong odor of alcohol. The defendant's speech was slurred and his eyes were glassy. When Kovanda asked the defendant for his driver's license, the defendant had trouble retrieving it from his rear pocket. Kovanda, at that point, requested that the defendant step out of his vehicle. Once out of his vehicle, the defendant had difficulty keeping his balance and swayed back and forth. The defendant admitted that he had been drinking beer and rum since noon.

Kovanda then administered several field sobriety tests. First, he asked the defendant to recite the alphabet from A to P. Despite those specific instructions, the defendant recited the entire alphabet from A to Z and slurred the letters M, N, O and P. Second, Kovanda instructed the defendant to perform the "four-finger test." Kovanda twice demonstrated to the defendant how to perform that test. Under the test, the defendant

had to touch his thumb to each of his fingers while counting from one to four and back. The defendant, again ignoring Kovanda's instructions, simply made a fist and counted to four. Third, Kovanda required the defendant to count backward from fifty-seven to forty-eight. Without even attempting to do so, the defendant responded that he could not complete that test.

Finally, Kovanda conducted an HGN test on the defendant. To conduct that test, Kovanda placed an object—his finger—approximately fifteen inches in front of the defendant's eyes. Kovanda asked the defendant to track the object from side to side as far as his maximum sideways gaze (maximum deviation)[2] would allow without moving his head. While doing so, Kovanda observed the reaction of each eye in three respects: (1) whether the eye exhibited "smooth pursuit"; (2) whether the eye exhibited "jerkiness" at "maximum deviation"; and (3) whether the eye exhibited jerkiness "prior to forty-five degrees" as the object moved toward the maximum deviation point. Kovanda noticed that the defendant's eyes exhibited "jerkiness." On the basis of the defendant's demeanor, and his performance on the HGN test and the other field sobriety tests, Kovanda concluded that the defendant was under the influence of alcohol or drugs.

Thereafter, Kovanda placed the defendant under arrest and transported him to the police department. Upon arriving at the police department, the defendant agreed to take a test on a Breathalyzer machine. The defendant's attempt at utilizing that machine, however, was unsuccessful because he did not properly follow Kovanda's instructions. As a result, Kovanda was unable to register an accurate reading on the machine. Kovanda asked the defendant to take a urine test instead, but the defendant refused to take any more tests.

---

[2] "Maximum deviation" represents the farthest limit of one's sideways gaze.

At trial, the state called Kovanda to testify about his observations of the defendant's demeanor and performance on the sobriety tests, including the HGN test. The defendant, however, objected to the introduction of Kovanda's testimony regarding the HGN test and its results because the state did not establish the proper foundation for the admission of scientific evidence as set forth in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, supra, 509 U.S. 593–94. Nevertheless, the court permitted the testimony without such a foundation, reasoning that HGN testing was not scientific evidence and stating: "I'm going to allow the officer to testify [about the HGN testing because] I feel that it's . . . not really, in my book, a really classic scientific test." The jury found the defendant guilty of operating a motor vehicle while under the influence of intoxicating liquor, and this appeal followed.

The defendant claims that the court improperly admitted Kovanda's testimony regarding the HGN test and its results without requiring that the state satisfy the criteria for the admission of scientific evidence as set forth in *Daubert*. We agree.

As a threshold matter, we note the proper standard of appellate review applicable to a trial court's determination on evidentiary matters. "Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *Bunting* v. *Bunting*, 60 Conn. App. 665, 670, 760 A.2d 989 (2000).

The defendant argues that under *State* v. *Merritt*, 36 Conn. App. 76, 647 A.2d 1021 (1994), appeal dismissed,

233 Conn. 302, 659 A.2d 706 (1995), the court abused its discretion by concluding that HGN testing was not scientific evidence. The state contends that *Merritt* is no longer valid in light of our Supreme Court's recent decision in *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). The dispositive issue, therefore, is whether *Porter* overruled *Merritt*.

To resolve that issue, a clarification of the relevant case law is necessary. In 1994, this court decided *Merritt*, the facts of which are similar to those in the present case. In *Merritt*, the trial court admitted testimony regarding the HGN test and its results without requiring that the state satisfy the criteria for the admission of scientific evidence. We concluded that "the HGN test and its results are based on a scientific principle, namely, that there is a discernable correlation between the increased incidence of and the angle of the onset of nystagmus and alcohol consumption." *State* v. *Merritt*, supra, 36 Conn. App. 90. We further noted that "the HGN test [is] unfamiliar to jurors, and a juror would not be in a position to weigh the testimony concerning the HGN test and its results without abandoning common sense and sacrificing independent judgment to the expert's assertions, which are based on understanding the technical aspects of the test." Id., 91. We held that, prior to admission, testimony regarding HGN tests and its results are the type of scientific evidence that must comply with the *then* prevailing requirements in Connecticut for the admission of scientific evidence derived from *Frye* v. *United States*, 293 F. 1013 (D.C. Cir. 1923).[3] *State* v. *Merritt*, supra, 91.

[3] Under the rigid *Frye* test, parties seeking to introduce scientific evidence could do so only if they proved that the scientific methodology has gained "general acceptance" in the scientific community. *Frye* v. *United States*, supra, 293 F. 1014.

When deciding *Merritt,* however, we also recognized that the United States Supreme Court in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* supra, 509 U.S. 586–89, had adopted as federal law a broader test for the admission of scientific evidence and had held that the rigid rule of *Frye* no longer governed.[4] *State* v. *Merritt,* supra, 36 Conn. App. 79–80 n.2. Nevertheless, we adhered to the *Frye* test in *Merritt* because our Supreme Court had not yet addressed the issue of whether *Daubert* had superseded *Frye* as a matter of state law. Id.

In 1997, however, our Supreme Court squarely addressed that issue in *State* v. *Porter,* supra, 241 Conn. 66–68. It explicitly held that "the *Daubert* approach should govern the admissibility of scientific evidence in Connecticut." Id., 68.

Contrary to the state's argument that *Porter* overruled *Merritt,* we view it as having modified *Merritt.* Although *Porter* affected the criteria for the admission of scientific evidence reiterated in *Merritt,* it did not affect the primary holding of *Merritt.* Testimony regarding HGN testing is still the type of scientific evidence that may mislead a jury in the absence of a proper foundation. Merely changing the criteria for the admission of scientific evidence has no effect on the primary holding of *Merritt.* Accordingly, we conclude that *Porter* modified

---

[4] The *Daubert* approach is more flexible and allows the admission of scientific evidence if it is scientifically reliable or valid. Under that approach, the United States Supreme Court enumerated four nonexclusive factors with which courts can determine whether scientific evidence is reliable. Those factors are as follows: "(1) whether [the scientific method] can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error, including the existence and maintenance of standards controlling the technique's operation; and (4) whether the technique is, in fact, generally accepted in the relevant scientific community." *State* v. *Porter,* supra, 241 Conn. 64, citing *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* supra, 509 U.S. 593–94.

*Merritt* so that, prior to admission, testimony regarding HGN testing is the type of scientific evidence that must comply with the *now* prevailing requirements in Connecticut for the admission of scientific evidence derived from *Daubert.*

Having clarified the law with respect to admission of testimony concerning HGN testing, we now turn our attention to the present case. The court, over the defendant's objection, allowed Kovanda to testify regarding the results of the defendant's HGN test without requiring the state to establish the proper foundation for the admission of scientific evidence as set forth in *Daubert.* Rather than conducting the proper *Daubert* analysis,[5] the court simply disregarded the primary holding of *Merritt* by concluding that HGN testing was not scientific evidence. It stated: "I'm going to allow the officer to testify [about the HGN testing because] I feel that it's . . . not really, in my book, a really classic scientific test." We conclude, therefore, that the court abused its discretion in admitting Kovanda's testimony regarding the results of the defendant's HGN test without requiring that the state satisfy the criteria for the admission of scientific evidence as set forth in *Daubert.*

Our inquiry, however, does not end with the conclusion that the court abused its discretion in admitting the testimony. We also must determine whether the

---

[5] Whether the HGN test satisfies the criteria of *Daubert* is a separate issue. Although our Supreme Court adopted the *Daubert* approach, it noted that the *Frye* test was not completely abandoned. Instead, the "general acceptance" test of *Frye* is "an important factor in a trial judge's assessment." *State* v. *Porter,* supra, 241 Conn. 84. So important, according to our Supreme Court, that "if a trial court determines that a scientific methodology *has* gained general acceptance, then the *Daubert* inquiry will generally end and the conclusions derived from that methodology will generally be admissible." (Emphasis in original.) Id., 85. Because the court here held that the HGN test is not even subject to the *Daubert* analysis, we need not address the issue of whether the HGN test satisfies the *Daubert* criteria and, accordingly, leave that issue for another day.

court's admission of such evidence constituted harmless error. "Where an evidentiary ruling has been found to be incorrect, but the improper ruling, as here, does not implicate a constitutional right of the defendant, the burden rests on the defendant to establish the harmfulness of the claimed impropriety. *State* v. *Chapman*, 229 Conn. 529, 544, 643 A.2d 1213 (1994); *State* v. *Merritt*, [supra, 36 Conn. App. 92].

"In order to establish the harmfulness of a trial court ruling, the defendant must show that it is more probable than not that the improper action affected the result. *State* v. *Chapman*, supra, 229 Conn. 544. The question is whether the trial court's error was so prejudicial as to deprive the defendant of a fair trial, or, stated another way, was the court's ruling, though erroneous, likely to affect the result? *State* v. *Brown*, 199 Conn. 14, 25, 505 A.2d 690 (1986); see also *State* v. *DePastino*, 228 Conn. 552, 567, 638 A.2d 578 (1994)." *State* v. *Grenier*, 55 Conn. App. 630, 643, 739 A.2d 751 (1999), cert. granted on other grounds, 252 Conn. 931, 746 A.2d 794 (2000).

In the present case, we cannot conclude that the admission of Kovanda's testimony regarding the HGN testing and its results affected the outcome of the defendant's trial. The jury heard other evidence from which it reasonably could have found that the defendant was intoxicated while operating his vehicle. Kovanda testified that prior to the administration of the field sobriety tests, the defendant's breath smelled of alcohol, his speech was slurred, his eyes were glassy and he was unable to keep his balance. The defendant, according to Kovanda, also admitted to drinking beer and rum since noon. Kovanda testified that in addition to the HGN test, he administered three other field sobriety tests and that, in his opinion, the defendant failed all three. On the basis of his experience, Kovanda concluded that the defendant's demeanor and failure of the

sobriety tests indicated that he was intoxicated while operating his vehicle. The admission of Kovanda's testimony regarding the HGN test and its results did not impede the jury's ability to evaluate the credibility of the other evidence he offered. We cannot conclude that, absent the HGN testimony, the result of the defendant's trial would have been different. Therefore, the court's improper admission of the HGN testimony was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.